UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:19-24249-Civ-WILLIAMS/TORRES

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

ONE 1999 135-FOOT BAGLIETTO YACHT,
KNOWN AS M/Y BLUE ICE, OFFICIAL
NUMBER 40146 REGISTERED IN ST.
VINCENT AND THE GRENADINES, IN
CURACAO,

    *Defendants*.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STRIKE AND DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on the Government's motion to strike Claimant MTGP135 LTD ("Claimant") for lack of standing. [D.E. 109]. In Claimant's response in opposition, it raised a motion to dismiss for lack of subject matter jurisdiction. [D.E. 111]. The Government responded thereto in opposition. [D.E. 115]. Claimant then filed a sur-response. [D.E. 125]. Therefore, the motions are now ripe for disposition. After careful consideration of the complaint, briefing, relevant authority, and for the reasons discussed below, the Government's motion to strike should be **DENIED** and Claimant's cross-motion to dismiss should be **DENIED**.

1

## I. BACKGROUND

### A. *Factual Background*

This is a civil forfeiture action *in rem* against property owned by the defendants in a parallel criminal case ("Criminal Defendants"), *United States v. Guruceaga*, Case No. 18-CR-20685-KMW/EGT (S.D. Fla.) (the "Parallel Criminal Case"). The property at issue here is one 1999 135-foot Baglietto yacht (the "M/Y Blue Ice"). The Parallel Criminal Case resulted from a loan scheme allegedly committed by the Criminal Defendants to take advantage of a foreign-currency exchange system under which the Venezuelan government would exchange bolivars at a fixed rate for U.S. dollars. The Venezuelan government's foreign currency exchange system included a fixed exchange rate that had been significantly lower than the actual economic rate by a substantial factor for several years.

Petróleos de Venezuela, S.A. ("PDVSA") was the Venezuelan state-owned oil company that was the country's main source of earnings and foreign currency, enabling it to fund several corrupt foreign exchange schemes. Under the Venezuelan currency exchange system, lenders could receive loan repayments from PDVSA at allegedly inflated currency rates, providing a substantial financial premium (10 to 1) return to lenders, in exchange for providing foreign currency liquidity to the Venezuelan government. Raul Gorrin, a Venezuelan national and owner of a television network in Venezuela, conspired with others to exploit the Venezuelan foreign currency exchange system. PDVSA and one of the conspirators entered into a loan contract wherein the conspirator would receive approximately €511 million from

2

PDVSA after only loaning PDVSA approximately 7 billion Venezuelan bolivars, the market equivalent of €35 million. The loan contract was executed by the Vice President of PDVSA. On May 25, 2015, an addendum to the loan contract with PDVSA doubled the initial credit line from approximately 7.2 billion Venezuelan bolivars to 14 billion bolivars.

Between December 29, 2014, and February 2, 2015, as a result of the loan scheme, PDVSA sent €385 million via seven wire transfers to accounts held by a European financial institution for the benefit of Eaton Global Services Limited, a company owned and controlled by Gorrin. Those Euros were subsequently exchanged for U.S. Dollars, and approximately $45 million of the funds initially for the benefit of Eaton Global Services Limited were transferred to Andiron Corp., S.A., another company owned and controlled by Gorrin. Between September 29, 2015, and December 4, 2015, more than $3 million traceable to the loan scheme was transferred from the European financial institution to a yacht sales company in Miami, Florida. Then, in December 2015, $3 million was transferred or withdrawn in five transactions from the yacht company to fund the purchase of the M/Y Blue Ice. A representative from the yacht company confirmed that the M/Y Blue Ice was acquired for Gorrin's brother-in-law, Gustavo A. Perdomo Rosales ("Perdomo"). Claimant is a limited company that is owned by Perdomo and his former wife, Mayela Antonina Tarascio Perez.

The M/Y Blue Ice was subsequently seized by the Curacao court for having liens against it totaling more than $4 million. On April 23, 2021, the M/Y Blue Ice

3

was sold in a judicial sale in Curacao to a Delaware limited liability company, Cristobal3 Partners LLC, which has since filed a verified claim for the M/Y Blue Ice. [D.E. 116]. The Government contends that because the M/Y Blue Ice was subsequently sold to Cristobal3, Claimant lacks standing to bring a claim for the M/Y Blue Ice. Claimant, in its opposition, turns the tables on the government. It contends that because the Court never took actual or constructive control of the M/Y Blue Ice, the case must be dismissed for lack of subject matter jurisdiction.

### B. *Procedural Background*

In October 2019, the Government filed this civil action *in rem* pursuant to 18 U.S.C. § 981(a)(1)(A), (C), the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"), and 18 U.S.C. § 985. [D.E. 1]. In January 2020, the Government sent direct notice of the Civil Forfeiture Case to Raul Gorrin, care of his counsel.

In December 2020, Claimant intervened in the Civil Forfeiture Case and claimed to be the "100% owner" of the M/Y Blue Ice. [D.E. 93]. In 2021, Claimant filed a motion to dismiss for lack of jurisdiction, insufficient pleading, and failure to state a claim. [D.E. 96]. On February 9, 2021, the Government served Claimant with special interrogatories. Claimant failed to timely respond to the special interrogatories, and, on September 29, 2021, the Court denied Claimant's motion to dismiss without prejudice, permitting it to renew its request for dismissal if it answered the special interrogatories within 14 days. [D.E. 108].

On October 1, 2021, the Government filed a motion to strike Claimant for failing to answer served special interrogatories and for lack of standing. [D.E. 109]. On October 13, 2021, Claimant filed a notice of compliance regarding the special interrogatories. [D.E. 110]. Claimant then responded in opposition to the Government's motion to strike on October 15, 2021. [D.E. 111]. The Court issued a paperless order on October 18, 2021, denying the Government's motion to strike to the extent the motion was based on the failure to answer interrogatories. [D.E. 113]. To the extent the motion to strike is based on lack of standing, however, the matter remained pending. *Id.* The Court therefore ordered that Claimant's response in opposition be treated as a cross-motion to dismiss for lack of subject matter jurisdiction and that the Government address that issue in its reply. *Id.* The Court also permitted that Claimant file a sur-response and address both the standing issue and subject matter jurisdiction issue. *Id.* On November 2, 2021, the Government filed a reply in support of the motion to strike Claimant and in opposition to the cross-motion to strike. [D.E. 115]. Claimant then filed a sur-response to the motion to strike and the cross-motion to dismiss on December 10, 2021. [D.E. 125].

## II. APPLICABLE PRINCIPLES AND LAW

### A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of showing the existence of federal jurisdiction is on the party asserting jurisdiction. *Viqueira v. First Bank*, 140 F.3d at 12, 16 (1st Cir. 1998). Attacks on subject matter

jurisdiction can either be "facial" or "factual." *Makro Cap. of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). A "facial attack" on the complaint asks the Court to determine whether the plaintiff has alleged a basis for subject matter jurisdiction and takes the allegations in the complaint as true for the purposes of the motion. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008). On the other hand, a "factual attack" challenges subject matter jurisdiction in fact, irrespective of the pleadings. *Makro*, 543 F.3d at 1258. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). Because a factual attack implicates the fundamental question of a trial court's jurisdiction, a "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" without presuming the truthfulness of the plaintiff's allegations. *Id.*

### B. *Motion to Strike*

The Government moves to strike Claimant pursuant to Supplemental Rule G(8)(c), which provides, in relevant part:

(c) Motion to Strike a Claim or Answer:

(i) At any time before trial, the government may move to strike a claim or answer:

> (A) for failing to comply with Rule G(5) or (6), or
> (B) because the claimant lacks standing.

(ii) The motion:

> (A) must be decided before any motion by the claimant to dismiss the action; and

6

> (B) may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.

Supp. R. Adm. Mar. Cl. G(8)(c).

### III.  ANALYSIS

Because establishing jurisdiction is an essential prerequisite for any judicial relief, that issue will be addressed first. If jurisdiction lies, we can then turn to the question whether Claimant has standing to assert a claim for the M/Y Blue Ice in this proceeding.

### A.  *The Court Has Subject Matter Jurisdiction Over the M/Y Blue Ice.*

Claimant seeks to dismiss the Complaint on the grounds that the M/Y Blue Ice was never seized (or otherwise placed under the control of the Court) because it was in Curacao at the inception of this action and was subsequently sold to a third party. Because Claimant alleges that the Court does not have jurisdiction based on the facts of the case, this is a factual challenge. Claimant's argument is based on outdated law; however, and the Court concludes that it has subject matter jurisdiction.

The district courts have original jurisdiction of all civil actions commenced by the United States. 28 U.S.C. § 1345. Additionally, § 1355(b) grants jurisdiction to the district courts when the property subject to forfeiture is located outside of the United States, and reads, in relevant part:

> (1) A forfeiture action or proceeding may be brought in –
>
>> (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or

> (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
>
> (2) Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District Court or the District of Columbia.

28 U.S.C.S. § 1355(b).

Because the plaintiff in this case is the United States, the Court has original jurisdiction pursuant to 28 U.S.C § 1345. *See United States v. Three Hundred Fifty-Three Thousand Six Hundred Thirty Dollars*, 463 F.3d 812, 814 (8th Cir. 2006) (affirming the district court's exercise of jurisdiction in a civil forfeiture action and stating that "the federal district courts have subject matter jurisdiction over civil forfeiture actions because they are 'commenced by the United States,' 28 U.S.C. § 1345, and are 'action[s] or proceeding[s] for the recovery or enforcement of any fine, penalty, or forfeiture . . . incurred under any Act of Congress,' 28 U.S.C. § 1355").

Additionally, the Complaint alleges that more than $3 million acquired from the loan scheme were transferred to a yacht sales company in Miami, Florida. [D.E. 1]. This satisfies the statutory requirement set forth in § 1355(b) of "any act" giving rise to the forfeiture occurring within the district; therefore, the Court also has jurisdiction pursuant to § 1355. *See United States v. Batato*, 833 F.3d 413, 420 (4th Cir. 2016) (holding that the district court had jurisdiction pursuant to § 1355 over defendants' assets in foreign countries because § 1355 was jurisdictional and the government satisfied the relatively low standard set forth in § 1355 by alleging that

the indicted parties used over 525 servers located within the forum district); *United States v. Assa Co.*, 934 F.3d 185, 187 (2d Cir. 2019) (holding that the district court had subject matter jurisdiction, where the United States sought to seize property belonging to companies owned and controlled by the government of Iran because the United States was a party to the case, and under 28 U.S.C. § 1355, because the action was a civil forfeiture arising under federal law); *United States v. Real Prop.*, No. 19-24249-Civ-KMW/EGT, 2021 U.S. Dist. LEXIS 99694, at *6 (S.D. Fla. May 25, 2021) (holding that the Court had subject matter jurisdiction over property located in Sunny Isles Beach, Florida, pursuant to 28 U.S.C. § 1345 and § 1355, because the United States was the plaintiff in the forfeiture action arising from acts or omissions that occurred within the Southern District of Florida including money laundering, conspiracy to bribe foreign officials, and other unlawful activities).

Claimant nevertheless argues that the Court lacks control, and thus jurisdiction, over the M/Y Blue Ice because it was in Curacao at the inception of this action. Claimant's contention relies on the traditional paradigm that "the court must have actual or constructive control over the res when an *in rem* forfeiture suit is initiated" to have jurisdiction. *Republic Nat'l Bank v. United States*, 506 U.S. 80, 87 (1992).

This argument proves to be very simplistic, but it also ignores statutory provisions that a generic common law principal does not account for. To begin with, the statute at issue in this forfeiture action, § 1355, was amended in 1992 to include new subsection (b) that courts have interpreted to countermand the previous notion

9

that a court must have constructive or actual control over the res to have jurisdiction. *See Batato*, 833 F.3d at 420 (holding that § 1355(b) authorizes district courts to issue process against property outside their districts, and effectively dispenses with the traditional requirement that courts had to have actual or constructive control over property to have jurisdiction over it); *United States v. Approximately $ 1.67 Million in United States Currency, Stock, & Other Valuable Assets*, 513 F.3d 991, 998 (9th Cir. 2008) ("The plain language and legislative history of the 1992 amendments makes clear that Congress intended § 1355 to lodge jurisdiction in the district courts without reference to constructive or actual control of the res."); *United States v. All Funds in Acct. Nos. 747,034/278*, 353 U.S. App. D.C. 23, 27 (2002) ("Congress intended the District of Columbia, among others, to have jurisdiction to order the forfeiture of property located in foreign countries.").

To support this conclusion, we take note of very specific legislative history that illustrates what Congress's purpose was with respect to constructive possession of the res. Senator Alphonse D'Amato of New York, when introducing the bill, clarified how § 1355 would alter the role of constructive control:

> Subsection (b)(2) addresses a problem that arises whenever property subject to forfeiture under the laws of the United States is located in a foreign country. As mentioned, under current law, it is probably no longer necessary to base in rem jurisdiction on the location of the property if there have been sufficient contacts with the district in which the suit is filed. . .. No statute, however, says this, and the issue has to be repeatedly litigated whenever a foreign government is willing to give effect to a forfeiture order issued by a United States court and turn over seized property to the United States if only the United States is able to obtain such an order.

10

> Subsection (b)(2) resolves this problem by providing for jurisdiction over such property in the United States District Court for the District of Columbia, in the district court for the district in which any of the acts giving rise to the forfeiture occurred, or in any other district where venue would be appropriate under a venue-for-forfeiture statute.

137 Cong. Rec. S12183-02, S12239 (Aug. 2, 1991). Therefore, the plain language of § 1355(b) and its legislative history make clear that Congress intended § 1355 to grant jurisdiction over foreign property to district courts without reference to constructive or actual control of the res, as in this case.

Further, the subsequent sale of the M/Y Blue Ice by the Curacao court to a third party does not affect the jurisdiction of the Court. *Republic*, 506 U.S. at 85 (citing *United States v. The Little Charles*, 26 F. Cas. 979, 982 (No. 15,612) (CC Va. 1818)) ("Continuance of possession" is not necessary to maintain jurisdiction over an *in rem* forfeiture action, and it is a general principle that, "jurisdiction, once vested, is not divested, although a state of things should arrive in which original jurisdiction could not be exercised"). The Supreme Court rejected a similar argument raised by the government in *Republic* that jurisdiction was lost when forfeited funds were transferred to the general treasury. "We hold that, in an *in rem* forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." *Id.* at 88-89.

In sum, the Court has subject matter jurisdiction because the United States is the plaintiff, 28 U.S.C. § 1345, acts giving rise to the forfeiture occurred in the Southern District of Florida, 28 U.S.C. § 1355, and the subsequent sale does not divest

the Court of jurisdiction. Therefore, because the Court has subject matter jurisdiction, the issue of whether Claimant has standing must be addressed.

### B. *Claimant Has Standing to Bring a Claim for the M/Y Blue Ice.*

A forfeiture claimant must satisfy both Article III standing and statutory standing requirements to file a verified claim properly. *United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 489 (11th Cir. 2013). Both have been satisfied in this case.

#### 1. *Claimant Has Article III Standing.*

Article III standing in civil forfeiture cases generally requires that the claimant have a colorable ownership, possessory or security interest in at least a portion of the defendant property. *United States v. $31,000.00 in United States Currency*, 872 F.3d 342, 348 (6th Cir. 2017). At the pleading stage, a claimant in a civil forfeiture case need only allege a possessory or ownership interest in the property, and the material allegations made in the verified claim are taken as true and are liberally construed in favor of the claimant. *United States v. $99,500.00 United States Currency*, 699 F. App'x 542, 543-44 (6th Cir. 2017).

A verified claim of ownership is sufficient to satisfy Article III standing at the pleading stage. *See $99,500.00 United States Currency*, 699 F. App'x at 544 (holding that the claimant's verified claim asserting sole ownership of the defendant cash sufficiently alleged Article III standing); *$31,000.00 in United States Currency*, 872 F.3d at 351 (holding that the claimant's verified claim was enough to satisfy Article III standing, and reversing the district court's decision to strike the claimants, where

12

the Government alleged that it took a bundle of cash from a claimant's suitcase, and each claimant stated that he owned the cash); *United States v. $196,969.00 United States Currency*, 719 F.3d 644, 646 (7th Cir. 2013) (holding that pleading Article III standing requires no more than alleging that the government should be ordered to turn over to the claimant money that it is holding that belongs to him, and that the standard that requires the claimant to actually show that they have a colorable legal interest in the claimed property is incorrect at the pleading stage). Therefore, by claiming to be the 100% owner of the M/Y Blue Ice in its verified claim, Claimant has established Article III standing.

The Government nevertheless contends that Claimant lacks standing because the M/Y Blue Ice was sold in 2021, undermining Claimant's assertion of being the "100% owner" of the yacht. [D.E. 109]. Claimant responded by alleging that, because the M/Y Blue Ice was half owned by a Specially Designated National, it was blocked property pursuant to Office of Foreign Assets Control ("OFAC") regulatory proscriptions 31 C.F.R. § 591.202 and § 591.407. Claimant alleges that these regulations render null and void any judicial process purporting to transfer any interest in blocked property absent an OFAC license. Therefore, according to Claimant, the sale of the M/Y Blue Ice to Cristobal3 was null and void, given that Cristobal3 did not possess an OFAC license when it purchased the yacht from the Curacao court. [D.E. 125].

Here, the Government's argument fails because, at the pleading stage, Claimant need only allege facts that, if true, show that Claimant has a "colorable

13

interest" in the property. *United States v. $17,900.00 in United States Currency*, 859 F.3d 1085, 1090 (D.C. Cir. 2017) ("At the pleading stage, a claimant need only allege a colorable interest in the property.") Claimant has alleged, in its sur-response, that the sale from the Curacao court to Cristobal3 is null and void, which, if true, would mean that Claimant still has a colorable interest in the property. [D.E. 125]; *see United States v. $557,933.89 in United States Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (holding that, to establish standing, the claimant need not prove the full merits of his underlying claim, the claimant need only show a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement).

Accordingly, having filed the Verified Claim alleging to be the owner of the M/Y Blue Ice, Claimant sufficiently pleaded Article III standing. [D.E. 93]. Whether that culminates in ultimate relief based on how null and void the Curacao sale turned out to be is an issue that must be addressed at a later stage of the proceeding.

### 2. *Claimant Also Has Statutory Standing.*

In addition to Article III standing, a claimant must also comply with the procedural requirements set forth in 18 U.S.C. § 983(a)(4) and the Supplemental Rules to establish statutory standing. *United States v. $12,126.00 in United States Currency*, 337 F. App'x 818, 819-20 (11th Cir. 2009); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 617 (7th Cir. 2015). Any person claiming an interest in seized property may file a claim for such property in the manner set forth in the Supplemental Rules, "except that such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as

14

applicable, not later than 30 days after the date of final publication of notice of filing of the complaint." 18 U.S.C. § 983(a)(4)(A). In addition, "a person asserting an interest in seized property, in accordance with subparagraph (a), shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." 18 U.S.C. § 983(a)(4)(B).

Supplemental Rule G(5)(a)(i) requires that a claim (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D). Supp. R. Adm. Mar. Cl. G(5)(a)(i)(A)-(C). Additionally, under Supplemental Rule G(5), a claimant must file an answer or a motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days after filing the claim. Supp. R. Adm. Mar. Cl. G(5)(b). A district court has discretion to extend the filing period. *$12,126.00 in United States Currency*, 337 F. App'x at 819-20; *see also ADT Sec. Servs. Inc.*, 522 F. App'x at 489 (11th Cir. 2013) (citing *United States v. Premises & Real Prop. At 4492 Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258, 1262 (2d Cir. 1989) ("technical noncompliance with the procedural rules governing the filing of claims may be excused").

Claimant filed a Verified Claim on December 31, 2020 and a motion to dismiss on February 1, 2021, in compliance with the Court's extension of the answer deadline. Additionally, the Verified Claim satisfies the requirements set forth by Supplemental Rule G(5)(a)(i). Therefore, Claimant has established statutory standing by complying with the procedural requirements necessary to do so.

15

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion to strike be **DENIED** and Claimant's motion to dismiss be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of June, 2022.

                                               */s/ Edwin G. Torres*
                                               EDWIN G. TORRES
                                               United States Magistrate Judge